UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY R. JOHNSON,

       **Plaintiff,**                               Case No. 2:22-cv-933
                                                 JUDGE EDMUND A. SARGUS, JR.
    v.                                         Magistrate Judge Chelsey M. Vascura

LIFE INSURANCE COMPANY
OF NORTH AMERICA,

       **Defendant.**

**OPINION AND ORDER**

This dispute under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, is before the Court on Plaintiff Jeffrey R. Johnson and Defendant Life Insurance Company of North America's ("LINA") cross-motions for judgment on the administrative record. (ECF Nos. 18, 21.) For the following reasons, the Court **DENIES** Plaintiff's motion (ECF No. 18) and **GRANTS** LINA's motion (ECF No. 21).

                              **I.**        **BACKGROUND**

This ERISA case asks the Court to review the calculation of Plaintiff's long-term disability ("LTD") benefits. The Court's review is confined to the administrative record,[1] which contains the following factual material:

**A. Plaintiff's Long-Term Disability Claim**

In July of 2017, Brown & Brown, Inc. hired Plaintiff as an account executive. (Admin. Rec. at 36, ECF No. 13.) Through his employment at Brown & Brown, Inc., Plaintiff became a participant in an ERISA-governed welfare benefit plan providing LTD benefits ("the Plan"), which

---

[1] *Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011) (a court's review "is limited to the administrative record available to the Plan Administrator").

1

was insured by LINA. (*See id.* at 1703-35.) The Plan provides a monthly disability benefit to any participant who is "disabled," as defined within the Plan. (*Id.* at 1707.)

On May 9, 2019, Plaintiff was involved in a motor-vehicle accident. (*Id.* at 983.) As a result of this accident, Plaintiff suffered extensive damage to his cervical spine. (*Id.* at 983-89.) Plaintiff did, however, continue to work until he underwent surgery on his cervical spine on March 27, 2020. (*Id.* at 359-60, 455-56.) Plaintiff was unable to return to work following this surgery. (*Id.* at 359-60.)

On April 6, 2020, due to his inability to return to Brown & Brown, Inc., Plaintiff applied to LINA for LTD benefits. (*Id.*) Prior to approving Plaintiff's claim, LINA investigated the claim by requesting information from Plaintiff's health care provider and his employer, Brown & Brown, Inc. (*Id.* at 462, 473-79.) Brown & Brown, Inc. provided LINA with documentation of Plaintiff's benefit coverages and a copy of Plaintiff's W-2 for 2019. (*Id.* at 391-94, 398-99.) Additionally, via an email dated July 22, 2020, Brown & Brown, Inc. explained to LINA that Plaintiff "is paid commissions only, and these are paid in a monthly basis." (*Id.* at 473.)

On July 24, 2020, LINA informed Plaintiff that his claim for LTD benefits had been approved, noting also that his date of disability was March 27, 2020. (*Id.* at 486-87.) LINA has continued to pay Plaintiff a monthly disability benefit ever since.

B. **Calculating Disability Benefits under the Plan**

As set forth in the Plan, a disabled participant's monthly benefit is calculated in several steps, taking into account the participant's pre-disability income and offsetting certain disability-related benefits the participant and his or her family receive. In essence, "the monthly benefit payable is the Gross Disability Benefit less Other Income Benefits." (*Id.* at 1708.)

The Plan, as it relates to Plaintiff's benefits, defines "Gross Disability Benefit" as "[t]he lesser of [60] percent of an Employee's monthly Covered Earnings . . ., rounded to the nearest dollar, or [$15,000]." (*Id.* at 391, 1708.) The Plan then defines Covered Earnings as follows:

> **Definition of Covered Earnings**
> Covered Earnings means:
> Greater of 1/12th W-2 annual gross earnings (including earnings from Schedule K-1 of the federal income tax return) for the calendar year just prior to the date Disability begins, or 1/12th current annual salary plus any bonus or commissions as reported by the Employer in effect on the date Disability begins. Does not include:
> • Employer contributions to a deferred compensation plan;
> • income received from any car, housing or moving allowance; or
> • income from a source other than the Employer

(*Id.* at 1707.)

Next, to arrive at the disabled participant's net monthly benefits, the Plan subtracts "Other Income Benefits" from the "Gross Disability Benefit." (*Id.* at 1708.) These "Other Income Benefits" include Social Security disability benefits, workers' compensation benefits, and "any amounts paid because of loss of earnings or earnings capacity through settlement, judgment, arbitration, or otherwise, where a third party may be liable, regardless of whether liability is determined." (*Id.* at 1720.)

### C. LINA Calculates Plaintiff's LTD Benefits

#### a. Plaintiff's Gross Disability Benefit

LINA began its calculation of Plaintiff's LTD benefits by determining Plaintiff's Covered Earnings. This required LINA to apply the greater of (a) 1/12th of Plaintiff's annual gross earnings for 2019 or (b) 1/12th of Plaintiff's "current annual salary plus any bonus or commissions as reported by [Brown & Brown, Inc.] in effect on the date" Plaintiff's disability began. (*See id.* at 1707.)

3

Upon review of Plaintiff's W-2 for 2019, which reflected gross earnings totaling $199,004.94, LINA applied "Part A"[2] of the Covered Earnings definition—that is, LINA calculated Plaintiff's Covered Earnings to be $16,583.75 (*i.e.*, 1/12th of $199,004.94). (*Id.* at 117.) From there, LINA calculated Plaintiff's Gross Disability Benefit to be 60% of $16,583.75, rounded to the nearest dollar, which equaled $9,950. (*Id.* at 1166.)

In calculating Plaintiff's Gross Disability Benefit under Part A of the Covered Earnings definition, LINA did not include Plaintiff's bonus of $41,211.22, paid on March 13, 2020. (*See id.* at 990.) Nor did LINA's calculations include Plaintiff's commissions earned during 2020, which totaled $94,591.89. (*See id.*)

### b. LINA Reduces Plaintiff's Gross Disability Benefits by His Other Income Benefits

After determining that Plaintiff's Gross Disability Benefit equaled $9,950, LINA then subtracted Plaintiff's "Other Income Benefits," of which there were several, from this figure to arrive at Plaintiff's LTD benefits amount. (*See id.* at 486, 1042-47.) For example, Plaintiff received monthly Social Security disability benefits because of his injury, as well as disability benefits from the Ohio Bureau of Workers' Compensation—both of which LINA interpreted as "Other Income Benefits," thereby reducing LINA's obligation to Plaintiff. (*Id.* at 1038-41.)

In addition to receiving payments for Social Security disability benefits and workers' compensation, Plaintiff also received a lump sum bodily injury settlement after settling a lawsuit against the at-fault driver involved in the May 2019 motor-vehicle accident from which Plaintiff's

---

[2] The Plan's definition of Covered Earnings comprises two methods of calculating Covered Earnings: the "[g]reater of [A] 1/12th W-2 annual gross earnings (including earnings from Schedule K-1 of the federal income tax return) for the calendar year just prior to the date Disability begins, or [B] 1/12th current annual salary plus any bonus or commissions as reported by the Employer in effect on the date Disability begins. (Admin. Rec. at 1707, ECF No. 13.) The Court will refer to the first method as "Part A" and the second method as "Part B" of the Covered Earnings definition.

4

disabling injury arose. (*Id.* at 120-21, 1833-35.) The total gross settlement was $100,000, of which Plaintiff received $62,314.45 after accounting for legal fees, outstanding medical bills, and subrogation liens. (*Id.* at 1833-35.) LINA claimed it was entitled to offset the proceeds from this settlement, taking a $5,000 payment from the settlement proceeds as reimbursement for previously paid LTD benefits and applying a $1,038.57 per month offset against future LTD benefits, beginning on April 25, 2021. (*Id.* at 120-21.) LINA scheduled this monthly offset to continue for 60 months to collect the remaining proceeds, assuming Plaintiff remained disabled. (*Id.*)

### D. Plaintiff Appealed His Disability Benefits

On September 27, 2021, Plaintiff, proceeding without counsel, appealed several components of LINA's calculations of his LTD benefits. (*Id.* at 983-84.) First, Plaintiff challenged LINA's calculation of his Gross Disability Benefit, and by extension, the Covered Earnings underlying it. Plaintiff advocated two alternative interpretations of the Plan that, if adopted, would result in a Gross Disability Benefit greater than the amount set by LINA. Under the first alternative, Plaintiff argued that his "monthly benefit should be based on earned income from the start of the year 2020 [until] the day [he] was off work for [his] injury or when [his] benefits became eligible." (*Id.* at 983.) And under the second alternative, Plaintiff argued that LINA should have counted his $41,211.22 bonus together with his 2019 commissions because the "bonus was earned in 2019 and was paid out in March of 2020." (*Id.* at 984.)

The second component of Plaintiff's appeal concerned LINA's decision to offset Plaintiff's LTD benefits due to the auto-accident settlement. (*Id.* at 983.) Plaintiff argued that, because the "settlement was for pain and suffering[,] not lost wages," whereas "the Plan permits offsets only for settlements due to 'loss of earnings or earning capacity,'" LINA improperly offset his benefits. (*Id.*)

5

### E. LINA Granted in Part and Denied in Part Plaintiff's Appeal

LINA issued its decision on Plaintiff's appeal in a letter dated November 2, 2021. (*See id.* 1065-69.) LINA's decision letter informed Plaintiff that LINA had upheld its decision that his annual Covered Earnings were $199,004.94:

> Our review has concluded your benefit rate is accurate. In order to calculate your benefit rate the previous year's earnings of 2019 are applicable. As the policy definition reads it is the greater of your salary as reported or your W-2. Your reported salary and W-2 from 2019 are equal and indicate your covered earnings are $199,004.94. Your bonus paid in March of 2020 is not applicable in calculating your benefit rate as it was not paid until the following year. Therefore the current annual benefit rate of $199,004.94 is accurate.

(*Id.* at 1067.)

As to Plaintiff's challenge concerning the offset related to his auto-accident settlement, LINA concluded that the monthly $1,038.57 offset "should not be applied and will be removed entirely." (*Id.*) As of the date LINA issued its decision, LINA had applied this offset for six benefit cycles, withholding a total of $6,231.42 from Plaintiff's benefit checks. (*Id.* at 1046, 1513.)

The decision letter also informed Plaintiff that, having exhausted all administrative levels of appeal, he had the right to challenge LINA's decision by bringing a legal action for benefits under ERISA. (*Id.* at 1020.)

### F. Plaintiff Files the Instant Lawsuit

On February 23, 2022, Plaintiff filed the pending action against LINA, asserting two claims: (1) LINA miscalculated Plaintiff's Covered Earnings by applying "an unreasonable interpretation," resulting in the underpayment of his LTD benefits; and (2) despite LINA conceding that it was never entitled to recover the proceeds Plaintiff received from his auto-accident settlement, LINA has failed to return his wrongly withheld funds. (Compl. ¶¶ 36-52, ECF No. 1.)

Both parties have since filed motions asking for judgment on the administrative record (ECF Nos. 18, 21), to which the responding party has filed their opposition (ECF Nos. 22, 24). And each party has replied to the opposition. (ECF Nos. 23, 26.) These motions are fully briefed and ripe for review.

## II. ANALYSIS

Plaintiff's Complaint alleges two counts against LINA. Count I alleges that LINA has been underpaying Plaintiff's LTD benefits by thousands of dollars each month due to an incorrect calculation of Plaintiff's Covered Earnings. (Compl. ¶¶ 36-41, ECF No. 1.) The second count of Plaintiff's Complaint alleges that "LINA wrongly withheld or otherwise recovered $11,231.42 from [him] owing to his personal-injury settlement."[3] (*Id.* ¶ 50.) The Court addresses each claim in turn.

### A. Count I: Plaintiff's Underpaid Benefits

#### a. Standard of Review

As an initial matter, the Court must determine whether an "arbitrary and capricious" or a "*de novo*" standard of review applies to LINA's calculation of Plaintiff's LTD benefits. District courts review a plan administrator's denial of benefits under an ERISA plan *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (*en banc*). As interpreted in this Circuit, *Firestone* holds "that discretion is the exception, not the rule and that the arbitrary and capricious standard does not apply unless there is a *clear* grant of discretion to

---

[3] The disputed amount consists of the $5,000 payment LINA claimed as reimbursement for previously paid LTD benefits and the six benefit cycles in which LINA applied the $1,038.57 per month offset against Plaintiff's LTD benefits. (Admin Rec. at 120-21, 1046, 1513, ECF No. 13.)

7

determine benefits or interpret the plan." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). Accordingly, "[a] federal court considering such a claim starts with the presumption that it should review the administrator's denial of benefits de novo." *Card v. Principal Life Ins. Co.*, 17 F.4th 620, 624 (6th Cir. 2021).

Here, LINA argues that the Plan grants it discretion, and therefore the arbitrary and capricious standard applies. (LINA Mot. at 6-10, ECF No. 21.) In making this argument, LINA directs the Court's attention to the section of the Plan titled "Description of Benefits," which states that the claimant "must provide the Insurance Company, at his or her own expense, *satisfactory proof* of Disability before benefits will be paid." (*Id.* at 7 (quoting Admin. Rec. at 1719, ECF No. 13) (emphasis added).) LINA argues that this "satisfactory proof" language is "nearly identical" to the policy language the *en banc* Sixth Circuit held vested discretionary authority in the plan administrator in *Perez*. (*Id.*) In *Perez*, the insurance policy stated "[Aetna] shall have the right to require as part of the proof of claim satisfactory evidence . . . that [the claimant] has furnished all required proofs for such benefits. . . ." *Perez*, 150 F.3d at 552.

Plaintiff, on the other hand, argues that the Plan's language falls short of providing the "*clear* grant of authority" necessary to trigger arbitrary and capricious review with regard to LINA's benefits calculations. (Pl. Mot. at 17, ECF No. 17.) Further, Plaintiff contends that the Court should decline to apply *Perez* to this case, noting that *Perez* is an outlier among circuit court decisions. (Pl. Reply at 2-3, ECF No. 24.) Finally, Plaintiff asserts that, should the Court find the Plan's "satisfactory proof" language sufficient to confer some discretionary authority, such discretionary authority should not extend to LINA's interpretation of the Plan—that is to say, such discretion may apply only to issues related to eligibility and *not* matters of contract interpretation. (*Id.* at 5.)

8

At the outset, the Court reiterates its view that "the more recent precedents have trended toward requiring more explicit language in order to find a policy discretionary." *Harrison v. Life Ins. Co. of N. Am.*, No. 2:18-cv-1077, 2020 U.S. Dist. LEXIS 36932, at *8 (S.D. Ohio Mar. 3, 2020) (collecting cases). Despite this observation, *Perez* remains binding on this Court. Furthermore, the Sixth Circuit has repeatedly held that the "satisfactory proof" language found in LINA's policies warrants review under the arbitrary and capricious standard. *See Frazier v. LINA*, 725 F.3d 560, 567 (6th Cir. 2013); *Cooper v. LINA*, 486 F.3d 157, 159, 164–65 (6th Cir. 2007); *Rochow v. LINA*, 482 F.3d 860, 865 (6th Cir. 2007); *Hogan v. LINA*, 521 Fed. App'x 410, 415 (6th Cir. 2013); *Likas v. LINA*, 347 Fed. App'x 162, 166 (6th Cir. 2009); *Kiel v. LINA*, 345 Fed. App'x 52, 55–56 (6th Cir. 2009). Against this backdrop, the Court is inclined to find that the Plan grants LINA at least *some* discretionary authority.

Assuming the Plan grants LINA some discretionary authority, the question then becomes whether this authority encompasses matters of contract interpretation—specifically, the interpretation of Covered Earnings under the Plan. *See Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808 (6th Cir. 2002) (indicating that a policy may vest discretion in the administrator over some—but not all—aspects of the policy). The Plan's language states that the claimant "must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid." (Admin. Rec. at 1719, ECF No. 13.) Recalling Plaintiff's argument on this issue, he contends that this provision should be limited to the determination of benefits—not the interpretation of the Plan. But a closer look at this provision indicates that contract interpretation, including the interpretation of Covered Earnings, is an integral component of determining whether an employee has submitted "satisfactory proof of Disability." The "satisfactory proof of Disability" language contains the defined term "Disability," which provides

9

that an employee "is considered Disabled if . . . he . . . is . . . unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." (*Id.* at 1707.) "Indexed Earnings," like "Disability," is also a defined term under the Plan. In defining "Indexed Earnings," the Plan states that, "[f]or the first 12 months Monthly Benefits are payable, Indexed Earnings will be equal to Covered Earnings," after which they are Covered Earnings indexed for inflation. (*Id.* at 1731.) Reading these provisions together, the Court concludes that the determination of whether an employee provides "satisfactory proof of Disability" necessarily entails the interpretation of Covered Earnings. Thus, in light of the Plan's "satisfactory proof" language, which the Sixth Circuit has consistently held grants LINA discretionary authority, the Court is inclined to find that this discretionary authority extends to the interpretation of Covered Earnings under the Plan.

But the Court need not decide this issue. Ultimately, the standard of review is not dispositive in the case because even under the most rigorous standard—*de novo* review—the Court concludes that, under the express terms of the Plan, Plaintiff is not entitled to the additional benefits he seeks.[4]

### b. LINA Correctly Calculated Plaintiff's Covered Earnings

Regardless of the standard of review applicable to LINA's interpretation of the Plan, the Court begins its analysis by determining *de novo* whether the Plan's definition of Covered Earnings is ambiguous. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) (citing *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1003 (6th Cir.1993)). Federal common law

---

[4] In the ERISA context, *de novo* review simply means a determination "whether or not the Court agrees with the administrative decision based on the record that was before the administrator." *Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus.*, 900 F.2d 963, 966 (6th Cir. 1990). In contrast, under the arbitrary and capricious standard, a district court accepts the administrative decision so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, . . . ." *Davis v. Kentucky Fin. Companies Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation and internal quotation marks omitted). Thus, when applying arbitrary and capricious review, a court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

10

rules of contract interpretation apply in construing an ERISA plan, and a court must interpret a plan's provisions "according to their plain meaning, in an ordinary and popular sense." *Perez*, 150 F.3d 550, 556 (6th Cir. 1998). Pursuant to these rules, provisions will be deemed ambiguous if they are "subject to more than one reasonable interpretation." *Rodriguez v. Tenn. Laborers Health and Welfare Fund*, 89 Fed. Appx. 949, 953 (6th Cir. Feb. 6, 2004) (citing *Wulf*, 26 F.3d at 1376). Thus, "[t]he mere fact that parties propose competing interpretations of language in a Plan 'does not dictate a finding that the provision is ambiguous.'" *Adams v. Anheuser-Busch Cos.*, 758 F.3d 743, 748 (6th Cir. 2014) (quoting *Shelby Cnty. Health Care Corp. v. The Majestic Star Casino LLC Grp. Health Benefit Plan*, 581 F.3d 355, 370 (6th Cir. 2009)). Instead, "the alternative interpretation . . . 'must be a plausible one.'" *Id.*

Currently, there is no ambiguity since the plain meaning of the contested provision (*i.e.*, the meaning of Covered Earnings) supports only LINA's interpretation. The Plan explains, in pertinent part, that Covered Earnings means the:

> Greater of [A] 1/12th W-2 annual gross earnings (including earnings from Schedule K-1 of the federal income tax return) for the calendar year just prior to the date Disability begins, or [B] 1/12th current annual salary plus any bonus or commissions as reported by the Employer in effect on the date Disability begins.

(Admin. Rec. at 1707, ECF 13.)

In calculating Plaintiff's Covered Earnings, LINA applied the formula articulated in Part A—that is, LINA determined that Plaintiff's gross earnings, as reflected in his W-2 for 2019, were greater than 1/12th of his "current annual salary plus any bonus or commissions as reported by the Employer in effect on the date Disability begins." Plaintiff does not dispute LINA's calculations under Part A:

> [Plaintiff] became disabled on March 27, 2020, so LINA was required to calculate his Covered Earnings by reference to his W-2 for 2019—"the calendar year just prior to" his date of disability. [Plaintiff's] 2019 W-2 reflects gross earnings of

11

> $199,004.94, so his Covered Earnings under the first prong are one-twelfth of that amount: $16,583.75.

(Pl. Mot. at 19, ECF No. 18.)

In the absence of a dispute as to LINA's calculation of Covered Earnings under Part A, the only remaining issue turns on whether LINA properly relied on Part A's formula, rather than the formula described in Part B. Simply put, would Part B, as applied to Plaintiff, generate higher Covered Earnings than Part A? The Court answers in the negative.

Part B of the Covered Earnings definition reads as follows: "1/12th current annual salary plus any bonus or commissions as reported by the Employer in effect on the date Disability begins." (Admin. Rec. at 1707, ECF 13.) This clause consists of essentially three components that, when summed, are divided by 12: (1) the employee's "current annual salary," in addition to (2) "any bonus or [(3)] commissions as reported by" Plaintiff's employer in effect on the date Disability begins.

The parties do not dispute that Plaintiff's "current annual salary" was zero—nor should they. (*See id.* at 473, ECF No. 13 (July 22, 2020, email from Brown & Brown, Inc. stating that Plaintiff "is paid commissions only, and these are paid in a monthly basis").) Inputting Plaintiff's "current annual salary" into Part B's formula results in the following: 1/12 ($0.00 + "any bonus or commissions as reported by the Employer in effect on the date Disability begins").

The Court now turns to the remaining values of Part B's formula. First, the Court marks March 27, 2020, as "the date Disability begins." (*Id.* at 486 (LTD benefits approval letter stating that Plaintiff's "date of disability is March 27, 2020).) Thus, per the terms of Part B, the Court must calculate "any bonus or commissions as reported by the Employer in effect [on March 27, 2020]." Of Plaintiff's pay statements contained in the administrative record, the statement from May 15, 2020, is closest in time to the date his disability began. (*See id.* at 990.) This statement

reveals a year-to-date bonus totaling $41,211.22 and year-to-date commissions totaling $79,723.72. (*Id.*) Applying these values to Part B yields the following product: 1/12 ($0.00 + $41,211.22 + $79,723.72) = $10,077.91. That is to say, Plaintiff's Covered Earnings calculated under Part B equal $10,077.91—or $6,505.64 *less* than Plaintiff's Covered Earnings under Part A.

The Plan unambiguously requires LINA to apply the "[g]reater of" Part A or Part B in calculating Covered Earnings—and that is exactly what LINA did when it concluded, under Part A, that Plaintiff's monthly Covered Earnings were $16,583.75.[5] The Court therefore affirms LINA's calculation of Plaintiff's Covered Earnings.

### c. Plaintiff's Alternative Interpretations of Covered Earnings Are Implausible

Plaintiff's moving papers offer two alternative interpretations of Part B of the Covered Earning's definition that would result in Covered Earnings equaling an amount greater than the amount LINA calculated—but neither interpretation is plausible. Plaintiff describes his first alternative interpretation as follows:

> The most natural reading of [Part B] would require LINA to calculate Johnson's income—his "salary plus any bonus or commissions as reported by" Brown & Brown, Inc.—for the 12-month period immediately preceding Johnson's date of disability. Such a calculation yields Johnson's "annual" income in an amount that is "current" as of "the date Disability begins."

(Pl. Mot. at 20, ECF No. 18.)

---

[5] The Court finds little merit to Plaintiff's argument that this interpretation is "not internally consistent" and "implausible" because it confines Part A to Plaintiff's 2019 earnings (*i.e.*, prior earnings) and Part B to his earnings in 2020 (*i.e.*, current earnings). (Pl. Opp'n at 12-13, ECF No. 24.) Plaintiff appears to argue that by delineating his earnings in such a fashion, Part B becomes "a dead letter." (*Id.*) In other words, such an interpretation is implausible because the Plan would not promise participants the greater of 1/12th of a *full*-year earnings (Part A) or 1/12th of a *partial*-year earnings (Part B). (The implicit assumption in Plaintiff's argument is that Part B would never apply to employees who are paid exclusively commissions and bonuses.) But Plaintiff constructs this argument on a shaky foundation. Indeed, the Court can readily envision a scenario in which Covered Earnings relies on Part B. Whereas Plaintiff became disabled in March 2020, a similar participant could become disabled in, say, October 2020, in which case her "bonus(es) or commissions" could very well exceed her earnings from 2019. In such a scenario, Part B is very much alive, and it would serve as the measure of the participant's Covered Earnings.

In other words, Plaintiff proposes an interpretation of Part B that calculates "any bonus or commissions" on a 12-month rolling basis. Under this interpretation, Plaintiff's "current annual salary" would still be zero, but that value linked to "any bonus or commissions" would encompass any bonuses and commissions Plaintiff earned in the 12-month period immediately before "the date Disability begins."

In arguing that this interpretation should control, Plaintiff cites to various dictionary definitions of "current" and "annual" to show that "current annual salary plus any bonus or commissions" should not be limited to a particular calendar year, as opposed to a rolling one-year period tethered to "the date Disability begins." (*Id.* at 20-21.) Plaintiff also homes in on the Plan's use of "any" to modify "bonus and commissions," which Plaintiff interprets as a signal that Part B should apply broadly to include his bonus and commissions paid within the 12 months prior to his date of disability. (*Id.* at 21.) Finally, Plaintiff contends that Part A's formula, which does reference "calendar year," demonstrates that Part B, which does *not* include any "calendar year" language, does not restrict Plaintiff's bonus and commissions to a particular calendar year. (*Id.*)

Plaintiff's arguments are unavailing. This is so largely because the Plan shows exactly how it would describe the rolling 12-month period that Plaintiff asks this Court to apply—and it does so a mere half-page below the definition disputed in this case. (*See* Admin. Rec. at 1707, ECF No. 13.) Included in the Plan's section defining Covered Earnings is a subsection addressing employees who have been with Brown & Brown, Inc. for less than a year. (*Id.*) This subsection provides, in pertinent part:

> Acquired Members for Less than One Calendar Year
> 1. For acquired commissioned producers (on a draw or not on a draw) that have been employed by Brown & Brown for less than one calendar year:
>    Greater of:
>    - $4,166.67; or

14

- Average of gross monthly earnings received *during the 12 months of employment* with the acquired agency *just prior* to the acquisition date; or
- 1/12th current annual salary plus any bonus or commissions as reported by the Employer in effect on the date Disability begins.

(*Id.* (emphasis added).)

Under the above provision, the Plan achieves Plaintiff's sought-after 12-month lookback by selecting a date (here, the date "acquired members" became employed by Brown & Brown, Inc.) and using plain language instructing LINA to calculate the employee's earnings received "during the 12 months of employment . . . just prior" to the selected date. But when examining Part B, it simply lacks similar language—that is, Part B does not contain any language indicating that Covered Earnings can be measured as 1/12th current annual salary plus any bonus or commissions "*during the 12 months of employment . . . just prior*" to the date Disability begins. Given the critically different language between Part B and the relevant Covered Earning's calculation for "acquired members," coupled with the fact that both these provisions are on the same page of the Plan, the Court declines Plaintiff's invitation to rewrite the Plan in his favor. *See Tonguette v. Sun Life & Health Ins. Co. (U.S.)*, 595 Fed. App'x. 545, 548 (6th Cir. 2014) ("[T]hat the two provisions use markedly different language, in such close proximity, is reason to read them differently.") (citing *Smith v. ABS Industries, Inc.*, 890 F.2d 841, 846 (6th Cir. 1989)).

Plaintiff's second alternative interpretation fares no better. This interpretation requires the Court to read "current annual salary" in Part B as encompassing Plaintiff's "annual benefits base"—an undefined term that Plaintiff interprets as the "measure of the total income paid to [Plaintiff] in 2019." (Pl. Mot. at 18, ECF No. 18.) Under this interpretation, Plaintiff's Covered Earnings under Part B would be 1/12th of his "annual benefits base" (*i.e.*, his total income from 2019) plus Plaintiff's bonus and commissions as of March 27, 2020. (*Id.* at 22.)

15

The Court finds Plaintiff's interpretation implausible for several reasons. First, Plaintiff supports his interpretation by relying on an outdated version of the Plan that was only in effect from July 1, 2018 to January 1, 2019. (*See* Admin. Rec. at 1794, ECF No. 13.) In this former version of the Plan, Part B is calculated as "1/12th current annual salary (ABB or annual benefits base) plus any bonus or commissions as reported by the Employer in effect on the date Disability begins." (*Id.*) However, when the Plan was restated as of January 1, 2019, the "ABB or annual benefits base" language was removed. (*See id.* at 1705 ("January 1, 2019. This Policy reflects the terms and conditions of coverage applicable on this date."), 1707 (defining Covered Earnings without reference to "ABB or annual benefits base").) The Court may not rewrite the Plan to include language that the Plan has explicitly removed.

Second, Plaintiff's interpretation would lead to a windfall that the plain language of the Plan does not contemplate. If "current annual salary" includes "annual benefits base," which Plaintiff defines as the total income Plaintiff received in 2019, then Plaintiff's Covered Earnings' under Part B would be: 1/12 ($199,004.94 + $41,211.22 +$79,723.72) = $26,661.66.[6] In other words, Plaintiff's interpretation reads Covered Earnings not as the "[g]reater of" Part A or Part B, but rather the *sum* of Part A *and* Part B. To read Part B as requiring this sort of arithmetic would contravene the Court's task of interpreting the Plan's terms "according to their plain meaning, in an ordinary and popular sense." *Perez*, 150 F.3d at 556. As such, the Court finds Plaintiff's second alternative interpretation, much like his first alternative interpretation, to be implausible.[7]

---

[6] This calculation uses the following values to determine "1/12th current annual salary (ABB or annual benefits base) plus any bonus or commissions as reported by the Employer in effect on the date Disability begins," as interpreted by Plaintiff: $199,004.94 represents Plaintiff's "annual benefits base" as established by his W-2 for 2019; $41,211.22 reflects Plaintiff's bonus received in March 2020; and $79,723.72 equals Plaintiff's year-to-date commissions as of May 15, 2020.

[7] To the extent Plaintiff relies on representations from LINA personnel to suggest that the deletion of "ABB or annual benefits base" in the amended Plan was merely stylistic rather than substantive, the Court need not address those

Finally, the Court notes that by using all monies received by plaintiff in 2019, any annual lump sum for bonuses or commissions received the year before are included in the amount of compensation.

In sum, the Court concludes that the Plan's definition of Covered Earnings is unambiguous as applied to Plaintiff—and this conclusion aligns with LINA's interpretation. LINA's adherence to the plain meaning of the Plan's language when calculating Plaintiff's Covered Earnings under Part A provided him with greater benefits than he would have received under Part B, and therefore the Court upholds LINA's decision regardless of the applicable standard of review.

### B. Count II: Plaintiff's Withheld Benefits

The Court now turns its attention to Plaintiff's second count under 29 U.S.C. § 1132—that "LINA wrongly withheld or otherwise recovered $11,231.42 from [him] owing to his personal-injury settlement." (Compl. ¶ 50, ECF No. 1.)

As described in Plaintiff's Complaint and Motion on the Administrative Record, after LINA concluded on appeal that it "was not entitled to recover the proceeds of [his] personal-injury settlement under the terms of the Plan," LINA, as the Plan's administrator, was required to return these funds to Plaintiff. (*Id.* ¶¶ 42-52; Pl. Mot. at 23-24, ECF No. 18.) Because LINA has failed to return these funds, the argument goes, the Court must "direct[] LINA to return to [Plaintiff] all wrongly held funds related to his personal-injury settlement." (Compl. ¶ 52, ECF No. 1.)

Plaintiff frames this claim as a denial of benefits,[8] and once again, regardless of the applicable standard of review—*i.e.*, *de novo* or arbitrary and capricious review—Plaintiff is not

---

arguments here. Where the disputed language is unambiguous, as this Court finds, Plaintiff may not resort to extrinsic evidence to create ambiguity. *Adams v. Anheuser-Busch Cos.*, 758 F.3d 743, 748 (6th Cir. 2014).

[8] *See* Pl. Mot. at 23, ECF No. 18 ("Because LINA's claim personnel have concluded that LINA was not entitled to collect these funds from [Plaintiff], there can be no debate that these amounts are "benefits due to" Johnson under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); *see, e.g., Gruber v. Unum Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 719 (D. Md. 2002) (ordering repayment of improperly offset benefits).").

17

entitled to the relief he seeks. This is because the unambiguous language of the Plan permits LINA to retain these funds if it has overpaid a participant's benefits, as is the case here:

> **Recovery of Overpayment**
> The Insurance Company has the right to recover any benefits it has overpaid. The Insurance Company may use any or all of the following to recover an overpayment:
> 1.  request a lump sum payment of the overpaid amount;
> 2.  reduce any amounts payable under this Policy; and/or
> 3.  take any appropriate collection activity available to it.
>
> The Minimum Benefit amount will not apply when Disability Benefits are reduced in order to recover any overpayment.

(Admin Rec. at 1721, ECF No. 13.) In addition, Plaintiff signed a document titled "Reimbursement Agreement," which provides, in pertinent part:

> I understand that the Plans may, at their option, retain any future payments of Disability Benefits, including any minimum weekly or monthly benefit, . . ., to repay any of the Plans for any overpayment, until the overpayment has been repaid in full . . . .

(*Id.* at 502.)

The uncontested record establishes that Plaintiff's receipt of awards of Social Security disability benefits and workers' compensation resulted in LINA having overpaid Plaintiff's benefits by more than $50,000. (*See id.* at 1471 (Plaintiff's Worker's Compensation Award resulted in the overpayment of $9,167.75), 1508 (Plaintiff's retroactive Social Security disability award resulted in the overpayment of $35,668.18), 1539 (Plaintiff's dependent Social Security disability award resulted in the overpayment of $9,847.52).) Given these overpayments, LINA opted to apply the disputed $11,231.42 against Plaintiff's Social Security overpayment rather than issue Plaintiff a check in that amount. (*See id.* at 1063 (indicating that Plaintiff still had additional social security overpayments even after accounting for the removal of the offset for the auto-accident settlement).) The Court finds that LINA's actions fall within the plain language of the Plan—that is, the Plan authorizes LINA to recover overpayments by reducing "any amounts

payable" or "any future payments," including the disputed funds to which Plaintiff claims to be entitled.[9] Accordingly, the Court denies Plaintiff's request for an order directing LINA to return the funds related to Plaintiff's auto-accident settlement.

On a separate but related note, the Court recognizes that LINA could ameliorate much of Plaintiff's concerns on this issue by providing Plaintiff with a breakdown of how LINA has credited these disputed funds to his overpayment balances. (*See* Pl. Opp'n at 16-17, ECF No. 24 (asserting that Plaintiff "is left to speculate" as to the whereabouts of the $11,231.42 that LINA retained).) LINA appears to have recognized this as well. Indeed, in December 2021, LINA extended an invitation for Plaintiff and his financial advisor to meet with LINA's accountant to "go over the details of [Plaintiff's] benefits and changes [LINA] made to his claim." (Admin Rec. at 1221, ECF No. 13.) Plaintiff, however, declined the invitation, preferring to resolve this issue through the litigation process. (*Id.*) Now, in light of the Court's resolution of Plaintiff's claims, a renewed attempt at clarifying LINA's application of Plaintiff's funds to his Social Security overpayment may prove fruitful. And should Plaintiff fear an uncooperative LINA, the Court reminds LINA that it may engender liability for refusing to comply with a participant's request for information. *See Crawford v. Roane*, 53 F.3d 750, 756 (6th Cir. 1995).

### III. CONCLUSION

For the reasons stated herein, the Court **DENIES** Plaintiff's motion (ECF No. 18) and **GRANTS** LINA's motion (ECF No. 21). The Clerk is directed to **ENTER JUDGMENT** in favor of LINA and close this case.

**IT IS SO ORDERED.**

---

[9] Indeed, Plaintiff's own briefing comes close to conceding that LINA may properly withhold the disputed funds so long as his benefits are overpaid: "LINA may be correct that it does not need to write [Plaintiff] a check for $11,231.42 while his benefits remain overpaid." (Pl. Opp'n at 17, ECF No. 24.)

19

<u>**9/13/2023**</u>                                                    <u>**s/Edmund A. Sargus, Jr.**</u>
**DATE**                                                            **EDMUND A. SARGUS, JR.**
                                                                   **UNITED STATES DISTRICT JUDGE**